110   665
s 113   23

110   665
153   ¹642

BECK v. SCHICK.

1. ADVERSE POSSESSION—WHAT CONSTITUTES.
   The possession of land by one of the heirs of an intestate is
   not adverse to the rights of another heir during the lifetime
   of the intestate's widow, where the former was living on the
   premises at the death of the intestate, and it was agreed by
   all the heirs that the place should be left just as it was until
   the death of the widow, who was also residing thereon.

2. EJECTMENT—TRIAL—INSTRUCTIONS TO JURY.
   It is not error to refuse an instruction in an action of eject-
   ment that the plaintiff must recover upon the strength of his
   own title, and not upon the weakness of that of his adver-
   sary, where it is apparent that the plaintiff does rely upon
   his own title, and the questions involved are clearly defined
   by the charge as given.

Error to Berrien; Coolidge, J. Submitted October 22,
1896. Decided November 17, 1896.

Ejectment by Henrietta Beck against Frederick Schick
and Caroline Schick. From a judgment for plaintiff,
defendants bring error. Affirmed.

*James O'Hara*, for appellants.

*N. A. Hamilton*, for appellee.

HOOKER, J. Christof Schick died intestate on February
21, 1875, leaving a widow; a son, who is the defendant
Frederick Schick; a daughter, then married and living in
Wisconsin, who is the plaintiff; and a grandson, who was
the son of a deceased daughter. All but the plaintiff, in-
cluding Frederick's wife, Caroline, the other defendant,
lived upon the premises, in one family, at the time of
Christof Schick's death, and continued to so live until
1887, when the widow died. This action of ejectment

was commenced in January, 1896, to recover an undivided interest in the premises, as heir of Christof Schick, and the only questions that need attention arise out of a claim of title by adverse possession set up by Frederick Schick.

The undisputed testimony shows that in April, 1875, old Mrs. Schick wrote to the plaintiff to come to Michigan and settle, and plaintiff's husband came to the premises and remained three days, during which time property matters were discussed. He wanted to take Mrs. Schick to Wisconsin to live with her daughter, and she agreed to go, but people advised her " not to leave the old place, as she had a good home;" and Frederick Schick, to make it satisfactory, said he would "leave the place as long as the old lady lived." Plaintiff's husband replied: " In order to make it all right, we ought to go and see the judge of probate. If he says leave it that way, all right, I will go home tomorrow." This arrangement was communicated to, and acquiesced in by, the plaintiff. To the question, " What was the arrangement?" the witness, plaintiff's husband, answered, " We were to leave the place just as it was until the old lady's death, and she was to stay there, and have her support on the place." They hired a livery, and went to Berrien Springs, and saw the judge of probate, who told them that they could leave it that way if it was so agreed; and plaintiff's husband went home the next morning.

The plaintiff claims that adverse possession did not begin to run until the death of Mrs. Schick, in 1887, while counsel for the defendants asserts that inasmuch as she understood from the time of her father's death, in 1875, that Frederick Schick claimed the entire place, the arrangement made, whereby the matter was to be left until the old lady's death, did not stop the running of the statute. We are of the opinion that the effect of that arrangement was understood to be, as its terms import, that any step looking towards the admeasurement of dower should be omitted, and the mother allowed the use of the place so long as she lived, and that steps for the

division of the place should await her death. The plaintiff took no action during her life, and Frederick Schick carried out the arrangement, so far as all appearances indicate. Whatever he may have thought or intended, or whatever the plaintiff may have known about his claims, she had a right to treat the possession as that of old Mrs. Schick; and Frederick's adverse possession did not commence to run until 1887, if it did then.

It is contended by counsel that the court should have given various requests to charge,—among others, the abstract proposition that a plaintiff in ejectment must recover upon the strength of his own, and not upon the weakness of his adversary's, title. The record showed plainly enough that the ancestor of both Frederick Schick and the plaintiff owned the premises, and died intestate; hence it would follow that the plaintiff was relying upon her own title, and there was no occasion to refer to the subject in the charge. A trial judge may properly disregard questions which have no legal bearing upon the matter in controversy, and decline to incorporate in his charge legal propositions which have no bearing upon the case. The court left the jury to find whether the arrangement was made as stated by plaintiff's husband, and advised the jury that, if they so found, the plaintiff could recover. As we are able to say, from the undisputed testimony, that the parties mutually acquiesced in the possession of Mrs. Schick until her death, in 1887, it follows that the judgment must be affirmed. It is therefore so ordered.

The other Justices concurred.